UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIKE TURNER, On Behalf of Himself and All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW J. FILIPOWSKI, et al., )<br>)<br>Defendants. ) | Civil Action No.   04-12294-PBS<br><br>Judge Saris |

### DEFENDANTS' RESPONSE
### TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF REMAND

#### INTRODUCTION

Plaintiff comes before this Court seeking reconsideration, but nowhere in his motion or 20-page brief does he even once address the very high standard for seeking reconsideration, or attempt to justify his motion under that standard. Not surprising, perhaps, since all Plaintiff has to offer is a warmed-over version of arguments that he already had the opportunity to make to the district court in Chicago. There is nothing new here, not even a hint that the court in Chicago overlooked something, or that there has been some new development that would give rise to reconsideration. Perhaps Plaintiff is of the view that assignment to a new judge, without more, gives him right to seek reconsideration. That, of course, is not the law. Plaintiff has simply not shown -- or even attempted to show -- a basis for reconsideration by this Court.

#### PROCEDURAL BACKGROUND

Commencing February 25, 2003, divine, Inc. ("Divine") and a number of related companies filed voluntary petitions for bankruptcy, which were subsequently consolidated. The petitions were filed in the United States Bankruptcy Court for the District of Massachusetts (*In re Enivid, Inc. (f/k/a*

- 1 -

*Divine, Inc.) et al.,* Case No. 03-11472-JNF et al.). Subsequently, commencing in May 2003, various name plaintiffs filed eleven class actions in Illinois alleging securities violations by various former directors and officers of Divine. Nine of these class actions were filed in the United States District Court for the Northern District of Illinois (the "Northern District"). In August 2003, these nine cases were consolidated before Judge Samuel Der-Yeghiayan of the Northern District under the caption of the first-filed case, *Bobbitt v. Filipowski et al.* The remaining two cases -- including this case, which was filed more than a month later, in September 2003 -- were filed in Illinois state court (the Circuit Court of Cook County), and subsequently removed to the Northern District on the basis that they were related to the Divine bankruptcy proceedings. This, the *Turner* case, was also originally assigned to Judge Der-Yeghiayan in the Northern District, along with *Bobbitt*. The two purported plaintiff classes in *Turner* (those who acquired Divine stock when Divine bought the companies Eshare and Delano) are subsumed within the sub-classes alleged in *Bobbitt*, and the facts alleged in the two cases are nearly identical. (In fact, plaintiff in *Bobbitt* has moved to consolidate the two cases, and defendants in both cases have assented to the consolidation.)

After *Turner* was removed, Plaintiff filed a motion seeking to remand the case to state court, arguing that the case was not related to the Divine bankruptcy proceedings. (A copy of Plaintiff's motion papers is attached hereto at Exhibits B and C.) Subsequently, Judge Der-Yeghiayan *sua sponte* ordered the parties in this case and in *Bobbitt* to brief "whether this Court should transfer this case to the District of Massachusetts pursuant to 28 U.S.C. 1412" and in this context to again brief "whether or not this case is related to the bankruptcy proceedings in that district." After considering the parties' briefs, Judge Der-Yeghiayan ruled in October 2004 that this case was related to the Divine bankruptcy proceedings and ordered that it be transferred to the District of Massachusetts, stating that this case is "closely connected" to "the bankruptcy proceedings presently underway

concerning Divine."[1] (A copy of Judge Der-Yeghiayan's order is attached hereto as Exhibit A.)

Upon being transferred to this District, and upon Defendants' motion, this case and the *Bobbitt* case were assigned to the same judge, the Hon. Patti B. Saris, since they are related via overlapping facts, claims and defendants. In the meantime, in December 2004, an adversary complaint was filed in the bankruptcy court against three of the defendants in this case, alleging breaches of fiduciary duty based on the same events underlying this case and *Bobbitt*.[2] (Further cementing the relation between the cases, the Second Consolidated Complaint recently filed in *Bobbitt* recites allegations from the bankruptcy adversary complaint – often verbatim.)

Subsequently, Plaintiff in this case filed his instant Motion for Reconsideration, and supporting brief, which goes on at length arguing -- despite Judge Der-Yeghiayan's ruling to the contrary -- that this case is not related to the Divine Bankruptcy proceedings.

## ARGUMENT

I.  **The Law of the Case Doctrine Prohibits Plaintiff From Asking This Court to Reconsider the Issues Decided by Judge Der-Yeghiayan's Order.**

The law of the case doctrine provides that a legal decision made at one stage of a civil case is controlling throughout the pendency of the litigation. *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002). This doctrine applies with equal force to reconsideration by a transferee judge of a previous ruling made by a transferor judge:

> The presumption, of course, is that a successor judge should respect the law of the case. The orderly functioning of the judicial process requires that judges of

---

[1]  As the record thus shows, defendants did not, out of a desire for "delay and tactical advantage," seek to transfer this case to the District of Massachusetts as a "venue more convenient to them." (Recon. Mot. at 3) No party sought transfer to this District; the transfer was on the initiative of Judge Der-Yeghiayan in the Northern District.

[2]  *Boles v. Filipowski, et al.*, Adversary Proceeding No. 04-01439 (Bktcy. D.Mass.).

coordinate jurisdiction honor one another's orders and revisit them only in special circumstances.

*Ellis*, 313 F.3d at 646 (collecting cases and overturning district court's reconsideration of transferor court's ruling). To allow otherwise would cause litigants to "usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage." *Id.* at 647.

As set forth above, Judge Der-Yeghiayan explicitly found this action to be closely related to the Divine bankruptcy. Plaintiff did not move for Judge-Der Yeghiayan to reconsider, nor did he seek an appeal of the order. Under the law of the case doctrine, this Court thus need not revisit Judge Der-Yeghiayan's decision.

## II. Plaintiff Has Made No Showing Whatsoever Under the Federal Rules that Reconsideration Is Warranted Here.

The Federal Rules of Civil Procedure do not mention motions for reconsideration, and Plaintiff's motion does not specify which Federal Rule governs his reconsideration motion. However, there are two rules that could apply: Rule 59(e) ("Motion to Alter or Amend a Judgment") and Rule 60(b) ("Motion for Relief from Judgment or Order"). Regardless of which rule is applied here, and particularly given the law of the case doctrine, plaintiff has failed to satisfy the demanding burden required by each.

First, to the extent Plaintiff's motion is pursuant to Rule 59(e), the motion is untimely and should be denied on that basis. Rule 59(e) provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e). Here, judgment was entered in the Northern District on October 8, 2004, and Plaintiff did not file his motion for reconsideration until March 1, 2005, well after the ten-day period allowed by Rule 59(e).[3] Assuming

---

[3] A copy of the Judgment is attached hereto as Exhibit D.

Plaintiff is moving under Rule 59(e), his motion should thus be denied. *See Feinstein v. Moses*, 951 F.3d 16, 18 (1st Cir. 1991) ("an untimely motion for reconsideration ... is a nullity" and the "ten-day limitation period of Rule 59(e) is one of the few limitary periods which the court has no power to enlarge") (citations omitted).

Second, Plaintiff has not even attempted to satisfy the heavy burden of Rule 60(b). Rule 60(b), which governs nonfinal orders, provides that "[o]n a motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding" for six enumerated grounds, including mistake, newly discovered evidence and fraud. Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is "'extraordinary in nature and ... motions involving that rule should be granted sparingly.'" *U.S. Steel v. M. DeMatteo Construction Co.*, 315 F.3d 43, 51 (1st Cir. 2002), quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002); *Stonkus v. City of Brockton School Dept.*, 322 F.3d 97 (1st Cir. 2003). Thus, "a party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Karak*, 288 F.3d at 19.

Here, Plaintiff does not refer to a single one of the six grounds enumerated in Rule 60(b), or attempt to make the showing called for in *Karak*. In fact, Plaintiff's motion does not include one sentence that purports to explain why they are entitled to the "extraordinary relief" of a second bite at the apple. Instead, Plaintiff merely repeats the same arguments, based on the same facts and case law, previously advanced in the Northern District. Such a tactic is not permitted by Rule 60(b), and should not be permitted by this Court. *See Barrett v. Lombardi*, 239 F.3d 23, 28 (1st Cir. 2001) ("A motion for relief from judgment cannot be used merely to reargue a point.") *See also Broadway v.*

*Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999) (defendants' motion for reconsideration properly rejected where defendants did nothing but reargue their claim of qualified immunity because Rule 60(b) "is not a vehicle for simple reargument on the merits").

### III.   Plaintiff Merely Rehashes Arguments He Has Already Made.

Defendants will not belabor the details of the remand argument here, because Plaintiff has mostly repeated the arguments from his original remand motion, which were thoroughly addressed in Defendants' response thereto, which is attached for the Court's convenience as Exhibit E. In fact, far from meriting reconsideration, any new developments here serve to confirm Judge Der-Yeghiayan's ruling.

#### A.   Developments in the Bankruptcy Have Bolstered Judge Der-Yeghiayan's Finding of Relatedness.

Plaintiff has simply restated his previous, rejected argument that this matter is not related to the Divine bankruptcy because, supposedly, the effect on the bankrupt estate, consisting mostly of Defendants' right to indemnification from Divine, is "hypothetical," "contingent," and "speculative." But Defendants' indemnification by the estate is nothing of the kind, because Defendants are, in fact, now receiving indemnification for the costs of their defense of this action (and others like it). Defendants pointed out this obvious fact in the previous briefing, but Plaintiff simply ignores it.[4]

---

[4] The essence of Plaintiff's argument is that perhaps Defendants' indemnification rights will be denied, on the grounds that the misconduct alleged disqualifies Defendants from receiving such indemnification. As an initial matter, Plaintiff is wrong because (as he emphasizes in his complaint), he has alleged mere negligence, which is insufficient to void Defendants' indemnification rights as a matter of Delaware law. *See United Artists Theatre Co. v. Walton*, 315 F.3d 217, 230-31 (3d Cir. 2003) ("Directors and officers in Delaware may obtain indemnity for their own negligence."). But, even more fundamentally, the mere chance that some unidentified party might at some point try to cease or even recoup the current indemnification of Defendants turns the governing standard on its head. Courts deny relatedness when the right to indemnification is "hypothetical," "speculative," or "contingent" -- not when one can cook up a hypothetical, speculative, or contingent scenario under which extant indemnification might be revoked. *See In re WorldCom*, 293 B.R. at 322-23 (noting that, in order to invoke "related to" jurisdiction, the effect on the debtor's estate needs to be "conceivable," not "certain").

Subsequent developments have removed any uncertainty regarding the basis for "related to" jurisdiction. As Defendants noted a year ago, such jurisdiction is created when the litigation has the effect of depleting, or putting at risk, assets targeted by creditors who are prosecuting alleged claims of the debtor for the benefit of the estate. *See Fisher v. Apostolou*, 155 F.3d 876, 882-83 (7th Cir. 1998) (finding "related to" bankruptcy jurisdiction over a third-party action "likely to affect" the assets pursued by the debtor in order to prevent "a race to the courthouse"); *Megliola v. Maxwell*, 293 B.R. 443, 446, 449 (N.D. Ill. 2003) (applying *Fisher* to enjoin an action by the debtor's shareholders against its officers and directors, because "a suit between third parties will affect the orderly administration of the estate"). Indeed, Judge Der-Yeghiayan took note of this in his order, stating that "some of Divine's creditors will be pursuing the same assets Plaintiffs seek in the instant action." (Ex. A)

When Defendants first raised this issue, it was already likely that creditors would bring such an action. These expected claims have now been brought, in the form of the *Boles* complaint, referred to above.[5] Because the cost of defending this and the other securities actions is currently reducing the amount of insurance ultimately available to settle or pay any judgment with respect to the creditors' claim, "related to" jurisdiction exists. Plaintiff had no response to this point a year ago, and it is telling that he has not even mentioned the issue while he seeks reconsideration, after the triggering action has become a reality.

**B.  The Trend of Legal Authority -- Which Plaintiff Misrepresents -- Overwhelmingly Supports Removal.**

Plaintiff has asserted that "Judge Cote's decision [in *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308 (S.D.N.Y. 2003)] remains the *only authority* for the proposition that a single, [federal

---

5   Messrs. Bennett, Cooper, Cowie, Forster, Hahn, Meredith, Nater and Rau, who are named as

securities law] cause of action is removable." (Motion at 7 n.11) (emphasis added). Plaintiff's statement is remarkable, mostly because it flies in the face of the nearly year-old affirmance of Judge Cote's decision by the Second Circuit Court of Appeals, in *California Public Employees' Retirement Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2nd Cir. 2004), *cert denied* 125 S. Ct. 862 (2005).

In its decision, the Second Circuit squarely held that the bankruptcy removal statute, 28 U.S.C. § 1452(a), trumps Section 22(a) of the Securities Act of 1933, and therefore that "generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come under the purview of 28 U.S.C. § 1452(a), which confers federal jurisdiction over claims that are related to a bankruptcy case." 386 F.3d at 108. The Second Circuit's decision, as a substantive matter, puts to rest any implication by plaintiff that there has been any change in the law that would justify reconsideration -- not that plaintiff has done anything to demonstrate any change in the law. Indeed, Plaintiff's failure to apprise the Court of this authority, even as it was nitpicking Judge Cote's opinion below, is all the more remarkable because <u>Defendants sent a copy of the Second Circuit's decision to counsel for Plaintiff nine months ago.</u> (*See* Exhibit F).[6]

As for supposed changes in the applicable law, Plaintiff offers only the so-called "recent"

---

Defendants here, are not named as defendants in the *Boles* complaint.

[6] Even setting aside the Second Circuit's *California Public* decision, Plaintiff's pronouncement is still flagrantly false, in that it even ignores case law cited in Defendants' original response to the remand motion. Indeed, the majority of courts examining the issue have found securities cases removable when they are related to a bankruptcy. *See, e.g., In Re Global Crossing, Ltd. Sec. Litig.*, Nos. 02 Civ. 910 & 10199, 2003 WL 21659360 (S.D.N.Y. July 15, 2003) (previously cited by Defendants); *Carpenters Pension Trust for Southern California v. Ebbers*, No. CV 03-04878, 2003 WL 22098022 (C.D. Cal. Sept. 9, 2003) (previously cited by Defendants); *In re Adelphia Communic. Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003); *see also New Mexico State Investment Council v. Alexander*, 317 B.R. 440 (D.N.M. 2004) (denying remand motion). Nor has Plaintiff effectively distinguished *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. 03-813GLT(ANX), 2003 WL 22025158 (C.D. Cal. June 30, 2003). That court did not base its analysis on the fact that the federal claim had been brought together with additional state law claims. Instead, the court in *Pacific Life* examined the apparent conflict between the non-removal provision of the 1933 Act, and the "related to" removal provision of the bankruptcy code, and squarely held that actions found to be related to pending bankruptcies are removable. *Id.* at *2.

*IMRF* case -- *Illinois Mun. Ret. Fund v. Citigroup, Inc.*, No. 03-465-GPM, 2003 U.S. Dist. LEXIS 16255 (S.D. Ill. Sept. 9, 2003), *aff'd on other grounds*, 391 F.3d 844 (7th Cir. 2004). This decision not only well predates Plaintiff's original motion to remand (which was filed November 26, 2003) but also is simply another state pension fund case. *Id.* at *9. As set forth at length in Defendants' response to the motion to remand (*see* Ex. E at § I.B.), this is a critical distinction because there are specific non-removal provisions for state pension plans, and other authority cited by Plaintiff expressly notes that fact.[7] Plaintiff here is not a state pension plan, so *IMRF* is inapposite.[8]

---

[7]     *See Retirement Systems of Alabama v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257 (M.D. Ala. 2002) (electing abstention because, "[a]t a minimum, these provisions clearly evince a policy of special respect for the forum choices of *state pension plans* with regard to securities claims and for state courts whose jurisdiction is invoked to hear them, and adds a strong reason for abstention in this case *not present in most other cases*") (emphasis added); *Tennessee Consolidated Retirement Systems v. Citigroup, Inc.*, No. 3:03-0128, 2003 U.S. Dist. LEXIS 10266, at *10 (M.D. Tenn. May 12, 2003) ("Given that SLUSA, a 1998 statute, allows *state pension plans*, such as TCRS, to pursue its Section 11 claims under the 1933 Act in state court and expressly bars any removal to federal court except as provided by 15 U.S.C. § 77p(c), the Court concludes that Section 22(a) is a special statute.") (emphasis added).

[8]     Although *IMRF* was recently affirmed, the Seventh Circuit did not review the substantive merits of the Southern District's order, because a district court's order remanding a case to state court is not reviewable on appeal, pursuant to 28 U.S.C. § 1447(d). 391 F.3d at 848. Instead, the Seventh Circuit limited its ruling to a finding that the conditional transfer order of the Judicial Panel on Multidistrict Litigation did not divest the district court of jurisdiction to issue a remand order. *Id.* at 850-51. Plaintiff has attempted to mischaracterize the district court's decision in *IMRF* as binding precedent that Judge Der-Yeghiayan should have followed (even though Plaintiff never cited the case to him). But the Southern District is merely a sister court to the Northern District of Illinois, and at this point, it is not clear why *IMRF* should carry more weight than the Northern District's more recent decision to deny Plaintiff's motion to remand in this very matter.

### CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for reconsideration.

March 15, 2005

Respectfully submitted,

ANDREW J. FILIPOWSKI, MICHAEL P. CULLINANE, PAUL L. HUMENANSKY, TOMMY BENNETT, JOHN COOPER, JAMES E. COWIE, MICHAEL H. FORSTER, ARTHUR W. HAHN, THOMAS J. MEREDITH, J. KEVIN NATER, AND JOHN RAU

By: /s/ Halye Sugarman
Counsel for Mr. Filipowski

Daniel J. Lyne (BBO#309290)
Halye A. Sugarman (BBO#646773)
HANIFY & KING
One Beacon Street
Boston, Massachusetts 02108-3107
617-423-0400
617-423-0498 (fax)

**For Andrew J. Filipowski**

Bruce S. Sperling
Thomas D. Brooks
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3200
Chicago, IL 60603
312-641-3200

**For Paul L. Humenansky**

Joel G. Chefitz
James E. Hanlon, Jr.
HOWREY SIMON
  ARNOLD & WHITE LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60610
312-595-1239

**For Michael P. Cullinane**

Samuel B. Isaacson
Joseph E. Collins
DLA PIPER RUDNICK GRAY CARY
203 North LaSalle Street
Suite 1800
Chicago, IL 60601
312-368-4000

**For Tommy Bennett, John Cooper James E. Cowie, Michael H. Forster, Arthur W. Hahn, Thomas J. Meredith, J. Kevin Nater, and John Rau**

John F. Hartmann
Michael A. Duffy
KIRKLAND & ELLIS, LLP
Aon Center
200 East Randolph Drive
Chicago, IL 60601