DOCKETED
JAN 21 2004

FILED
JAN 20 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MIKE TURNER, On Behalf of Himself and All )
Others Similarly Situated, )
)
Plaintiff, )
)
vs. )
) Case No. 03 C 7670
ANDREW J. FILIPOWSKI, MICHAEL P. )
CULLINANE, PAUL L. HUMENANSKY, )
TOMMY BENNETT, JOHN COOPER, JAMES E. )
COWIE, MICHAEL H. FORSTER, ARTHUR W. )
HAHN, THOMAS J. MEREDITH, J. KEVIN )
NATER and JOHN RAU, )
)
Defendants. )

**PLAINTIFF'S REPLY TO DEFENDANTS'
RESPONSE TO MOTION TO REMAND**

## Introduction

Defendants' Response to Motion to Remand fails for two primary reasons. First, defendants' opposition does not demonstrate that defendants' indemnity is part of the bankruptcy estate as required by the test set forth in *In re Fedpak Sys.*, 80 F.3d 207 (7th Cir. 1996), as evolved from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), and its progeny. Second, plaintiff's remand motion should be granted because defendants' opposition was procedurally defective. Consequently, defendants have failed to meet their burden that federal jurisdiction exists and therefore the case must be remanded.

**I.    Federal Courts Do Not Have "Broad Removal Powers" as Asserted by Defendants**

Defendants claim that the federal courts have "broad removal powers" under the bankruptcy removal statute. Defendants' Response to Motion to Remand ("Defs.' Mem.") at 2. However, the Seventh Circuit, like most other jurisdictions, has found only limited power in the federal courts to exercise removal jurisdiction. "Courts should *interpret the removal statute narrowly* and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).[1] Also, the party seeking removal has the burden of establishing federal jurisdiction. *Id.* at 911; *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). Moreover, "[a]ny doubt regarding jurisdiction should be resolved in favor of the states" (*i.e.*, remand). *Doe*, 985 F.2d at 911; *Roe v. O'Donohue*, 38 F.3d 298, 304 (7th Cir. 1994). Alternatively stated, "[q]uestions on removal are ... *strictly construed against federal jurisdiction.*" *Katonah v. USAir, Inc.*, 868 F. Supp. 1031, 1033 (N.D. Ill. 1994). Thus, defendants' characterization of the removal power under §1452 is patently incorrect.

Consequently, defendants have a heavy burden to carry in demonstrating that federal jurisdiction exists in this case. They must overcome the narrow interpretation that this Court must give to §1452; they must defeat the presumption that plaintiff is entitled to the forum of his choice; and they must leave no question as to the propriety of federal jurisdiction since any doubt whatsoever regarding whether federal jurisdiction exists must be resolved in favor of remand.

---

[1] Here, as throughout, all citations are deemed omitted and all emphasis is deemed added unless otherwise noted.

Moreover, the Seventh Circuit has adopted a more narrow application of the "related to" jurisdiction test as set forth in *Pacor, supra. See Fedpak, supra.* Thus, defendants are not faced with a "broad" removal statute. Instead, they are faced with a heavy burden which they have not met.

### A. "Related To" Jurisdiction Does Not Exist Because the Indemnification to Which Defendants Claim They Are Entitled Is Not Part of the Bankruptcy Estate

Defendants argue that "related to" jurisdiction exists because "defendants have ... an immediate, non-contingent right to indemnity from Divine." Defs.' Mem. at 9. However, quoting directly from defendants' opposition brief, defendants only have a right to indemnity, "*so long as* defendants acted in *good faith* and in a manner ... reasonably believed to be in or not opposed to the *best interest of the Corporation*, ...." *Id.* This language unequivocally gives Divine the right to deny indemnification to defendants by claiming, and subsequently demonstrating, that defendants are not entitled to indemnity because defendants acted in bad faith or contrary to the best interest of Divine. Consequently, defendants do not have "an immediate, non-contingent right to indemnity" because whether defendants are entitled to indemnity at all is contingent on whether Divine decides not to indemnify defendants.

Decisional law is clear that when a purported indemnity agreement is the basis for "related to" jurisdiction, the claimed right to indemnity must arise "immediately and automatically" upon the filing of the action. The cases cited by defendants hold no differently. In the case of *Philippe v. Shape, Inc.*, 103 B.R. 355, 358 (D. Me. 1989), cited by defendants, the court was faced with an indemnification provision which read, "The corporation *shall in all cases* indemnify...." *Id.* at 358. Accordingly, the court in *Philippe* wrote:

> By virtue of the apparently *unconditional duty to indemnify*, a judgment in favor of Plaintiff in this action would *automatically result* in indemnification liability on the part of Shape.

*Id.*

Defendants also cite *Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997), decided by the United States District Court for the Eastern District of Pennsylvania, in support of their argument that federal jurisdiction exists under a "related to" analysis. However, the same argument

advanced by defendants here, and for which they cite *Belcufine*, was addressed (and dispensed with) by the court in *Steel Workers Pension Trust v. Citigroup*, Inc., 295 B.R. 747, 751-52 (E.D. Pa 2003). Importantly, the *Steel Workers* court is within the Third Circuit, which is the circuit which decided the *Belcufine* case. Distinguishing the *Belcufine* case, the *Steel Workers* court emphatically stated that

> the Third Circuit did not imply in *Pacor*, when it mentioned *In re Brentano's*, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), that an indemnification agreement instantly gives rise to "related to" jurisdiction. ***Nor did it so hold in Belcufine v. Aloe***, 112 F.3d 633 (3d Cir. 1997).

*Id.* at 751. Accordingly, the *Steel Workers* court reiterated, "In ... *Belcufine*, ***the right to indemnification accrued immediately*** upon the filing of the lawsuit against the party entitled to indemnification from the bankruptcy estate." *Id.* Moreover, the court wrote:

> The indemnification provision in *Belcufine* provided for ***guaranteed reimbursement*** of "reasonable expenses, judgments, fines, or costs incurred in a legal proceeding" whenever the corporate officers, ***regardless of their liability***, were sued. Like the agreement in *Brentano's*, the *Belcufine* by-laws automatically triggered liability without the need to file an additional lawsuit.

*Id.* at 752.

Finally, in *Hohl v. Bastian*, 279 B.R. 165, 175 (W.D. Pa. 2002), also cited by defendants, the court found "related to" jurisdiction by applying a standard subsequently repudiated by the *Steel Workers* court, which is also within the same circuit as *Hohl*. The *Hohl* court looked to the language of *Pacor* and concluded that "related to" jurisdiction is appropriate if the action, "'*in any way* impacts upon the handling and administration of the bankrupt estate.'" *Id.* at 176. The *Hohl* court unilaterally expanded the reach of "related to" jurisdiction under *Pacor* by finding that the test would encompass, "'even a proceeding which portends a mere contingent or tangential effect on a debtor's estate.'" *Id.* The *Hohl* court wrote:

> The *Pacor* test does not require the bankruptcy court to satisfy itself that the outcome of the potentially "related to" litigation *will* impact the estate to some certain degree, but only that it may have some effect.

*Id.* (emphasis in original).

However, this interpretation of *Pacor*, and the concomitant reach of "related to" jurisdiction, was emphatically corrected by the *Steel Workers* court, which addressed the issue

*four months after* the *Hohl* decision. The *Steel Workers* court dealt directly with this misinterpretation of *Pacor*, writing:

> If there was any doubt about the application of the *Pacor* test, it was dispelled in *Federal-Mogul* when the Third Court rejected the implication that indemnification agreements *a fortiori* established "related to" jurisdiction.

295 B.R. at 752.

Consistent with, but more narrow than the Third Circuit's "related to" test which evolved from *Pacor*, is the Seventh Circuit's test, which requires that the property purportedly affecting the bankruptcy estate actually be part of the bankruptcy estate. *Fedpak*, 80 F.3d at 214-15 (quoting *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992)). The *Fedpak* court reasoned:

> "Since the property [is] no longer part of the bankrupt[cy] estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the ... estate, the bankruptcy court [has] no jurisdiction to determine rights to the property."

80 F.3d at 214-15.

Therefore, under *Fedpak*, "related to" jurisdiction does not exist because the property over which defendants wish the bankruptcy court to exercise jurisdiction does not even presently exist and therefore cannot be part of the bankruptcy estate. Only when the terms which give rise to the right to indemnification are absolute, as they were in *Philippe* ("The corporation *shall in all cases* indemnify,..."), can the right to indemnification be said to accrue immediately, and only when that right accrues immediately can the indemnification actually be part of the bankruptcy estate. In the words of the *Steel Workers* court, Divine, "agrees to indemnify the ... defendants *only if certain conditions are satisfied*." 295 B.R. at 753. Thus, defendants' purported right to indemnity does not "affect[] the amount of property in the bankruptcy estate. *Fedpak*, 80 F.3d at 213-14. Therefore, "related to" jurisdiction does not exist and the case should be remanded.

1. **The Resolution of Any Issue in This Action Is Not *Res Judicata* as to Divine**

Defendants argue that because "no one – not even plaintiff – has alleged any bad faith by defendants" the provision in the indemnity agreement that precludes reimbursement if the defendants acted in "bad faith" is moot. Defs.' Mem. at 11. Defendants point out that plaintiff alleges only strict liability and negligence claims and argue that "[u]nder these circumstances,

- 4 -

there is nothing 'hypothetical' or 'speculative' about defendants' right to indemnity...." Defs.' Mem. at 12. Defendants' argument fails for two reasons.

First, defendants fail to realize (or conspicuously ignore) that the resolution of this action or any issue in this action does not bind Divine in any way because Divine is not a party to this action. Consequently, Divine may dispute any issue raised by defendants in seeking indemnity, including whether defendants acted in bad faith. *Pacor*, 743 F.2d at 986 (finding that the bankruptcy debtor could not be bound by *res judicata* or collateral estoppel; the bankruptcy debtor would still be entitled to litigate any issue in response to a claim by the party seeking indemnification); *City of Birmingham Ret. & Relief Fund v. Citigroup*, Inc., No. CV-03-BE-0994-S, 2003 U.S. WL 22697225, at *4 (N.D. Ala. Aug. 12, 2003).

Thus, even if plaintiff had alleged bad faith and ultimately proved bad faith, those findings would not prevent defendants from subsequently obtaining indemnity from Divine in a separate action to secure their right to indemnity. Likewise, the fact that plaintiff alleges only negligence and strict liability does not preclude Divine from denying indemnity following this action based on the

"bad faith" of defendants.

Second, the purported indemnity agreement not only provides that defendants will be denied indemnity if they acted in bad faith, but it also denies defendants indemnity if they acted contrary to the best interest of Divine. Thus, regardless of whether plaintiff has alleged bad faith, this action alleges that defendants acted contrary to the best interest of Divine - an entirely separate basis for denying indemnity. Therefore, defendants' argument that Divine is bound or restricted in any way by this action is flawed and must fail.

### 2. The Filing of a Proof of Claim Does Not Establish "Related to" Jurisdiction

Defendants argue that "the filing of a proof of claim on an indemnity agreement establishes 'related to' jurisdiction." Defs.' Mem. at 12. However, the fact that a proof of claim has purportedly been filed by defendants in this action does not satisfy defendants' burden of establishing federal jurisdiction. *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 285 B.R. 519,

527 (M.D. Ala 2002). *See also City of Birmingham*, 2003 WL 22697225 at *4; *In re Salem Mills, Inc.*, 148 B.R. 505, 510 (Bankr. N.D. Ill. 1992).

As made clear by the court in *City of Birmingham*, whether or not proofs of claims have been filed have *no effect*, over and above the bare allegation that they seek indemnity from the bankruptcy debtor, on the ability of this Court to remand this case to state court. 2003 WL 22697225 at *4. The court in *Salem Mills*, cited by defendants, made the same determination. Commenting on the affect of a proof of claim on resolving disputed "related to" jurisdiction, the *Salem Mills* court wrote, "a proof of claim merely transforms the improbable into the conceivable." 148 B.R. at 510 n.9.

Therefore, the proof of claim does no more than to establish that a basis for indemnity exists. The filing of a proof of claim does nothing to perfect that right, or in any way abrogate the requirement that defendants acted in good faith and in the best interest of Divine. Therefore, defendants' argument that the filing of a proof of claim established "related to" jurisdiction fails.

   3.    **The Assets Being Pursued by Divine's Creditors Have No Affect on the "Related To" Jurisdictional Analysis in This Action**

Defendants argue that "related to" jurisdiction can be found when "[t]he creditors will likely pursue the same assets – insurance proceeds of Divine's director's and officer's policies – as plaintiff does here." Defs.' Mem. at 13. In support of this argument, defendants cite to *Fisher v. Apostolou*, 155 F.3d 876, 882-83 (7th Cir. 1998). However, the *Fisher* court was faced with an entirely different issue. The *Fisher* court wrote:

> This case presents the question whether claims that the defrauded investors have against the accomplices and against the futures commission merchant through which they conducted much of their business *may be stayed* for the duration of the bankruptcy proceeding.

*Id.* at 877. The *Fisher* case did not involve removal pursuant to 28 U.S.C. §§1334(b), 1446 and 1452(a) which is the issue presented here. The *Fisher* court did not engage in a *Pacor* analysis because it was not presented with the issue before this Court, which is whether this action was properly removed to federal court. The *Fisher* case is therefore distinguishable and has no bearing on the instant motion to remand. Therefore, defendants' argument that some of Divine's current creditors are likely to pursue the same assets plaintiff seeks in this case is simply a red

herring. The sole issue before this Court is whether federal jurisdiction exists under a *Fedpak* and *Pacor* "related to" analysis.

### B. The 1933 Act Prohibits Removal and the Bankruptcy Removal Statute Does Not Trump that Prohibition

As defendants recognize, "several courts have noted, though, the bankruptcy removal statute conflicts with Section 22(a) of the Securities Act of 1933...." Defs.' Mem. at 3. Accordingly, the principle holds that when claims that might be removable under one provision of the federal removal statutory scheme are made expressly non-removeable by another provision of the same statutory scheme, the express non-removeability provision controls. *See Ret. Sys. of Ala.*, 209 F. Supp. 2d 1257. This principle is consistent with the presumptions in favor of plaintiff's chosen forum and the significant burdens imposed on defendants to affirmatively demonstrate federal jurisdiction in removed actions.

#### 1. SLUSA Preserved the Express Non-Removability of 1933 Act Claims

Defendants argue that the conflict between the statues should be resolved in favor of removal because the statute purportedly allowing removal was enacted subsequent to the 1933 Act. Defs.' Mem. at 4. However, Section 22(a) of the 1933 Act survived the passage of SLUSA in 1998 which itself was enacted subsequent to the bankruptcy removal statute. Thus, Congress obviously intended for 1933 Act claims to remain non-removable, or it would have expressly provided otherwise. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381-82 (1982) (concluding that Congress' "comprehensive reexamination and significant amendment [to the commodities exchange act] ... is itself evidence that Congress affirmatively intended to preserve [the existing law]"). As the court correctly recognized in *Tennessee Consolidated Retirement System v. Citigroup, Inc.*, No. 3:03-0128, 2003 WL 22190841, at *3 n.2 (M.D. Tenn. May 9, 2003), "SLUSA, a 1998 statute amending the 1933 Act, is the relevant comparative statute [when considering §1452(a)], not the original 1933 Act."

Thus, defendants' focus on the 1933 Act itself is misplaced; SLUSA is the relevant statute of reference, and SLUSA did not alter the non-removability of 1933 Act claims. Therefore, defendants' argument that the bankruptcy removal statute controls must fail.

### 2. Section 22(a) of the 1933 Act Is the More Specific, and Therefore Controlling, Statute

Defendants claim that the bankruptcy removal statute controls because it is the more "specific" statute. Defs.' Mem. at 5. However, the non-removal provision of Section 22(a) of the 1933 Act, which was left undisturbed by SLUSA, is the more specific, and therefore controlling, statute. *Tenn. Consol.*, 2003 WL 22190841 at *3 (holding that §22(a) of the 1933 Act is a "special statute" by virtue of the fact that it bars removal of certain, specific claims and therefore it controls over 28 U.S.C. §§1334(b) and 1452(a), which are "general" statutes). Thus, both recency and specificity of the respective statutes weigh in favor of remand. Defendants fail to meet their burden of proof on resolving this conflict.

### 3. The Policies Underlying the Statutes Favor Remand

Lastly, defendants argue that the "sacrosanct nature of a securities plaintiff's choice of forum" only holds true in the context of securities litigation brought by state pension plans. Defs.' Mem. at 6. Similarly, defendants argue that, "[b]y enacting SLUSA, therefore, Congress has endorsed no deference for a private plaintiff's choice of a state court forum...." Defs.' Mem. at 7. However, deference to a plaintiff's choice of forum is not a concept born by SLUSA. The United States Supreme Court recognized that plaintiffs are entitled to deference in their choice of forum decades before SLUSA was enacted and has never restricted its application solely to state pension plan plaintiffs in securities class action lawsuits. *E.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The Seventh Circuit agrees, imposing no such restriction on the doctrine. *E.g., In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (and cases cited therein). Indeed, "'the defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand.'" *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 176 (S.D.N.Y. 2003).

The futility of defendants' argument to justify federal jurisdiction in this case is demonstrated by their resort to characterizing lawsuits brought in state court but alleging only 1933 Act claims as a "loophole" of SLUSA. Defs.' Mem. at 6, 7. Defendants thereby concede the propriety of plaintiff's filing this action in state court, and therefore the propriety of state

court jurisdiction, pursuant to applicable law. For, if plaintiff was not permitted to bring this action in state court, it would be a misnomer to characterize plaintiff's right to do so as a "loophole." Thus, defendants look to this Court to declare by judicial fiat that Congress had always intended to make 1933 Act claims removable when it enacted the bankruptcy removal statute even though Congress failed to do so. If Congress so intended, it is incumbent upon Congress, not this Court, to clarify its intent by amending the statute.

The futility of defendants' argument is even more glaringly demonstrated by their faulty assertion that had plaintiff included a state law cause of action, the state law claim would have been dismissed and the federal claims would have proceeded in federal court. Defs.' Mem. at 7. This hypothetical scenario is untrue and its logic unavailing. "[T]he fact that SLUSA preempts *some* causes of action in a complaint does not entitle a defendant to broadly invoke federal preemption against the entire complaint." *Gray v. Seaboard Sec., Inc.*, 241 F. Supp. 2d 213, 219 (N.D.N.Y. 2003) (emphasis in original). Thus, "the provisions of the Uniform Standards Act direct a district court to examine a lawsuit in its entirety" for purposes of remand. *Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1085 (N.D. Ga. 2003). When a cause of action specifically falls within the Delaware carve-out, the term "covered class action" as used in SLUSA is not to be read as referring to a claim or claims within a complaint, but rather the lawsuit itself as a whole. *Id.* at 1085. Consequently, "if an action has been removed, but part of the action fits the Delaware carve-out, 'the action may be maintained in State court'" and *the whole action must therefore be remanded. Id.*

Thus, even under defendants' hypothetical scenario, the case would have to be remanded to state court, not litigated in federal court. Therefore, defendants' argument and analogy in asserting that the removal statute controls over the non-removability of 1933 Act claims fails and the case must be remanded.

II.     **This Motion Should Be Remanded as Defendants' Opposition Was Not Filed Timely**

Pursuant to this Court's Order of December 9, 2003, defendants were given until January 8, 2004 to file their response to plaintiff's motion to remand. Although defendants attempted to

-9-

file an opposition on January 8, 2004, it was rejected by this Court.[2] Defendants subsequently filed their operative opposition brief on January 12, 2004, four days too late.

As "any doubts as to removability should be resolved in favor of remand," courts rigorously enforce procedural requirements involving motions to remand. *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) (holding that when some defendants fail to timely file a notice of joinder in removal under a statute requiring unanimity of defendants in order to effect removal, remand is properly granted due to the procedural defect); *Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991) (holding that when a defendant fails to timely file a notice of removal, remand is properly granted); *accord Berrios v. Our Lady of Mercy Med. Ctr.*, No. 99 Civ. 21 (DLC), 1999 WL 92269, at *2 (S.D.N.Y. Feb. 19, 1999).

In *Payne*, the court found that remand was required as a result of the removing defendants' procedural error in failing to meet a filing deadline requirement *even though the court determined that it properly had jurisdiction* over the claim. *Payne*, 172 F. Supp. 2d at 477-78. Recognizing that "federal courts rigorously enforce the statute's thirty day filing requirement," the court granted remand, reasoning that "policy dictates that '[a]bandoning the *bright-line rule* adhered to by a *plethora of cases across the nation* in favor of a discretionary approach would lead to uncertainty and encourage litigation about matters peripheral to the merits of lawsuits.'" *Id.* at 477. The *Payne* court also cited the well established policies that guide all district courts in ruling on motions to remand, writing:

> In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.

---

[2] The original brief filed by defendants was 22 pages long and in violation of Northern District of Illinois Local Rule 7.1 which provides in pertinent part:

> Neither a brief in support of *or in opposition to any motion* nor objections to a report and recommendation or order of a magistrate judge or special master *shall exceed 15 pages* without prior approval of the court. Briefs that exceed the 15 page limit must have a table of contents with the pages noted and a table of cases. *Any brief or objection that does not comply with this rule shall be filed subject to being stricken by the court.*

- 10 -

*Id.* Indeed, "'the defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand.'" *Wilds*, 262 F. Supp. 2d at 176. Therefore, defendants' procedural error alone is sufficient grounds to remand this action to state court, even if this Court would otherwise find that it would properly have jurisdiction.

### Conclusion

Defendants improperly removed this action which was properly filed in state court to this federal district court. The case should be remanded on two primary grounds: (1) defendants have failed to establish federal jurisdiction over this action; and (2) defendants' opposition brief was procedurally defective. Defendants have not met their burden in demonstrating that the removal statute controls over the 1933 Act's non-removability provision and that this action is "related to" the Divine bankruptcy proceedings under *Fedpak* and *Pacor*. Consequently, if this Court finds that there is any uncertainty at all as to whether federal jurisdiction exists, remand is required. Therefore, plaintiff respectfully requests that this action be remanded to State Court.

DATED: January 20, 2004                    Respectfully submitted,

                                           LAW OFFICE OF PATRICK J. SHERLOCK

                                           _____
                                           PATRICK J. SHERLOCK

                                           11 South LaSalle Street, Suite 1600
                                           Chicago, IL 60603
                                           Telephone: 312/683-5575

                                           ROBBINS UMEDA & FINK, LLP
                                           1010 Second Ave., Suite 2360
                                           San Diego, CA 92101
                                           Telephone: 619/525-3990
                                           Facsimile: 615/525-3991

## CERTIFICATE OF SERVICE

I, Patrick J. Sherlock, an attorney, hereby certify that on January 20, 2004, I caused a copy of the above documents to be served upon the below-named attorneys by First Class Mail, postage pre-paid before the hour of 5:00 p.m.

_____
Patrick J. Sherlock
11 South LaSalle Street
Suite 1600
Chicago, Illinois 60603
312/683-5575
I.D. No. 27812

**Service List:**

Adam P. Merrill
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3300
Chicago, Illinois 60603

Samual Isaacson
Piper Rudnick
203 North LaSalle Street
Suite 1800
Chicago, Illinois 60601

John F. Hartmann
Kirkland & Ellis
200 East Randolph Street
Chicago, Illinois 60601