IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MIKE TURNER, On Behalf of Himself )
and All Others Similarly Situated )
)
)
Plaintiff, )
)
)
v. ) No. 03 C 7670
)
ANDREW J. FILIPOWSKI, et al. ) Judge Der-Yeghiayan
)
Defendants. )

## RESPONSE TO MOTION TO REMAND

## INTRODUCTION AND BACKGROUND

The Bankruptcy Code is meant to establish a system whereby the affairs of a bankrupt estate are resolved as efficiently and fairly as possible. To that end, the bankruptcy removal and bankruptcy jurisdiction statutes, 28 U.S.C. §§ 1334(b) and 1452(a), provide that all actions "related to" a pending bankruptcy are removable to federal court. The present case is exactly the kind of action for which these statutes were enacted.

Plaintiff's federal securities claims are not unique, as nine other related securities class actions filed in federal court in May, June and July 2003 have been consolidated and are currently pending before this Court. (Bobbitt, et al. v. Filipowski, et al., Case No. 03 C 3599). The consolidated complaint for those nine actions includes both of the putative classes plaintiff seeks to certify, and includes all of his claims.

The present complaint is nothing more than an attempt by plaintiff and his counsel to open yet another front of litigation related to the bankruptcy of Divine, Inc. ("Divine") which, along with related entities, filed its voluntary petition under Chapter 11 on February 25, 2003. (In re Divine, Inc. et al., Nos. 03-11472-JNF, et al. (Bankr. D. Mass.)). The present complaint was not filed until September 30, 2003. It was filed in state court, purports to allege only federal

securities law claims, and was accordingly removed to federal court.[1] Plaintiff has based his motion for remand on a supposed exception to the broad removal powers of the bankruptcy removal statute. But there is no such exception for private litigants.

Nor is there any doubt that this action is "related to" the Divine bankruptcy proceeding. This standard is met when a case could affect the assets of the debtor's estate. The pursuit of this action has already caused defendants to incur fees and expenses for which they are automatically entitled to indemnification from Divine's bankruptcy estate. Accordingly, it is certain that this action will affect the amount of money in Divine's bankruptcy estate that will be available to distribute to creditors, and is thus "related to" the Divine bankruptcy.

In light of the "related to" jurisdiction of the Bankruptcy Code, as well as the complete overlap of claims, such that this Court will preside over them in a consolidated action, this Court should deny plaintiff's motion for remand.

## ARGUMENT

### I.      This Action was Properly Removed as Related to a Case Arising Under Chapter 11.

Defendants removed this action pursuant to 28 U.S.C. §1452(a) and 28 U.S.C. §1334(b) as a case related to Divine's bankruptcy. The bankruptcy removal statute states:

---

[1] Plaintiff seeks to certify (i) a class of persons who exchanged their shares of eshare Communications ("eshare") for shares of Divine when Divine acquired eshare, and (ii) a class of persons who exchanged their shares of Delano Technology for their shares of Divine when Divine acquired Delano. Moreover, plaintiff purports to allege that the individual director and officer defendants of Divine violated the Securities Act of 1933 in connection with these transactions. These are precisely the same claims brought on behalf of the same persons, denominated as the "eshare SubClass" and the "Delano Technology SubClass," as are alleged in the consolidated action. (See Bobbitt Consolidated Class Action Complaint ¶¶ 2, 9(a), 9(c), 164-172, 173-75). Plaintiff's counsel also filed another putative class action in state court involving claims that substantially overlap those consolidated before this Court, and that case, too, was removed to federal court. (Howard, et al. v. Filipowski, et al., Case No. 03 C 5561 (N.D. Ill.)) The Howard plaintiffs have moved to remand that case on the same bases asserted in this case. That motion is fully briefed and currently pending before Judge Guzman.

> A party may remove any claim or cause of action in a civil action other than [certain tax claims or claims brought by a governmental unit] to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Section 1334 in turn, establishes "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). As several courts have noted, though, the bankruptcy removal statute conflicts with Section 22(a) of the Securities Act of 1933 ("1933 Act"), which provides that "[n]o case arising under this subchapter and brought in any state court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. §77v(a). See In Re Global Crossing, Ltd. Sec. Litig., 2003 WL 21659360, at *2 (S.D.N.Y. July 15, 2003) (Ex. C hereto); see also Carpenters Pension Trust for Southern California v. Ebbers, 2003 WL 22098022, at *2 (C.D. Cal. Sept. 9, 2003) (Ex. D). To resolve such a conflict, courts apply several tests, each of which makes clear that the bankruptcy removal statute takes precedence here.

### A. The Bankruptcy Statute Trumps the 1933 Act's Prohibition on Removal.

In resolving a conflict between two statutes, "a court must consider the timing, purpose, and scope of each enactment." Global Crossing, 2003 WL 21659360 at *2. Courts applying these principles to the conflict between the bankruptcy removal statute and the 1933 Act's prohibition on removal have found that the more recent, more specific bankruptcy removal provision governs. Id. at *3; Ebbers, 2003 WL 22098022 at *4; see also Pacific Life Ins. Co. v. J.P. Morgan Chase & Co., 2003 WL 22025158, at *2 (C.D. Cal. June 30, 2003) (Ex E) (holding that bankruptcy removal governs because "Section 22(a) proscribes removal based on federal question jurisdiction under 28 U.S.C. section 1441(a), but does not prevent removal based on

other grounds").[2]

### 1. The Bankruptcy Removal Statute was Promulgated More Recently.

Ordinarily, a more recently enacted statute will control where it conflicts with prior law. In re Johnson, 787 F.2d 1179, 1182 (7th Cir. 1986). Just six months ago, the Global Crossing court considered the precise question before this Court and concluded that "the bankruptcy removal statute [Section 1452(a)], enacted in 1984, takes precedence over the Securities Act's prohibition on removal [Section 22], enacted in 1933." Global Crossing, 2003 WL 21659360, at *3; see also In re WorldCom, 293 B.R. at 328-29 ("Section 1452(a) was enacted decades after Section 22 became law, and could easily have added [an] exception to incorporate 1933 Act claims. It did not do so.")

Plaintiff attempts to avoid this clear and logical conclusion by pointing to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(c), 78bb(f)(2), which amended Section 22(a) in 1998 to permit removal of securities class actions that also allege state law securities claims. But this relatively narrow change to Section 22(a), meant to close a loophole left by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), had nothing to do with bankruptcy removal, and therefore was in no way a "recent indication of congressional intent regarding the [then] fourteen-year-old conflict between § 1452 and § 22(a)." Id. In fact, as the court in Worldcom held:

---

[2] The issue has not been addressed in this Circuit. Although Judge Gottschall was faced with the issue in 2002, she elected to stay the proceedings so that remand of that case and similar removed actions could be decided by a district court designated by a multidistrict panel. Board of Trustees of the Teachers' Retirement System of the State of Illinois v. WorldCom, Inc., 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002). The remand motion was ultimately denied because, inter alia, the prohibition on removal of securities law cases does not apply to those related to a pending bankruptcy. In re WorldCom, Inc. Securities Litig., 293 B.R. 308, 328-29 (S.D.N.Y. 2003). Indeed, those courts with substantial commercial dockets (the Southern District of New York and the Central District of California) which have examined the issue -- in Global Crossing, In re WorldCom, Ebbers, and Pacific Life Ins. -- have concluded that bankruptcy removal trumps the securities law provision prohibiting such removal.

> It would be ironic indeed to read this provision of the SLUSA, which was passed for the purpose of *expanding* federal jurisdiction (albeit in a specific, narrow way) to permit greater coordination of overlapping securities actions in federal courts, as implicitly *contracting* federal jurisdiction by reversing, without comment in either text or legislative history, the bankruptcy statute's effect on the prior removal scheme.

Id.; accord Ebbers, 2003 WL 22098022, at *3 ("Congress apparently did not consider the conflict between section 22(a) and section 1452 when enacting SLUSA and explicitly declined to change the treatment of individual lawsuits. Therefore, the relevant date for the most recent expression of Congressional intent remains the enactment of section 1452."). Thus, even considering plaintiff's arguments, the "1987 enactment of §1452(a) itself," the purpose of which was "to broaden, not narrow, federal jurisdiction," remains "Congress's most recent indication of its intent" with respect to the removal of 1933 Act claims. Global Crossing, 2003 WL 216593360, at *3.

### 2. The Bankruptcy Removal Statute is More Specific.

When two statutes are in conflict, "a specific statute takes precedence over a more general statute." In re Johnson, 787 F.2d at 1181. The bankruptcy removal statute, when considered as part of the broader federal removal scheme, is not, as plaintiff would have it, a general statute. "Rather, it creates a specific, new heading of federal removal jurisdiction, which did not exist at the time that either the general federal question removal statute, §1441, or the Securities Act of 1933, with its exception to §1441, was enacted." Global Crossing, 2003 WL 21659360, at *3. As the court in Global Crossing also stated:

> [T]he bankruptcy removal statute is just as specific with respect to actions within its scope as § 22(a) of the Securities Act. It supplements the general removal statute, which allows for a broad range of exceptions "otherwise expressly provided by Act of Congress," by adding a specific authorization to remove *any* action within the bankruptcy jurisdiction. Thus, the bankruptcy removal statute is not, as plaintiffs claim, a "general statute."

Id. at *2 (emphasis in original). The court in Ebbers similarly rejected the argument that Section 22(a) is more specific than Section 1452, concluding that "[e]ach statute states a general rule and specific exceptions to the rule." 2003 WL 22098022 at *4. See also WorldCom, 244 F. Supp. 2d at 904 & n.2.

### 3. Allowing Removal of 1933 Act Claims Pursuant to the Bankruptcy Statute is Consistent with the Policies Underlying the Statutes.

Courts seek to honor the policies underlying conflicting statutes. SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc., 211 F.3d 21, 27-28 (2d Cir. 2000) ("[W]here two laws are in conflict, courts should adapt the interpretation that preserves the principle purposes of each."). In this instance, "[t]he efficiency and reorganization goals of the Bankruptcy Code require interpreting Section 1452 in favor of federal jurisdiction and removal except in the limited cases it expressly excepts." Global Crossing, 2003 WL 21659360, at *3. Against this, plaintiff offers the supposed sacrosanct nature of a securities plaintiff's choice of forum. But, as set forth below, the authority for this proposition is to be found only in the context of a state pension plan plaintiff. Plaintiff here is not a state pension plan. In fact, SLUSA itself directly contradicts plaintiff's description of Congress as protective of a private plaintiff's choice of a state court forum.

SLUSA was enacted to close a loophole of the PSLRA, 15 U.S.C. §§ 77z-1, 78u. The PSLRA created substantial burdens for class action plaintiffs in federal securities cases, causing many plaintiffs to evade the Act by filing state securities law class actions instead. Nauheim v. Interpublic Group of Companies, Inc., 2003 WL 1888843, at *5 (N.D. Ill. April 16, 2003) (Ex. F). SLUSA was designed to ensure that all securities class actions were governed uniformly by federal law, including the protections of the PSLRA, by providing that (i) no class action predicated on a securities law violation and based on state law can be maintained (15 U.S.C. §

77p(b)); and (ii) that any such class action may be removed to federal court (15 U.S.C. § 77p(c)). Nauheim, 2003 WL 1888843, at *5. It is an unintended loophole of SLUSA itself that a class action brought in state court but alleging no state law claims falls outside the ambit of SLUSA's removal provision. Id. Plaintiff was well aware of the loophole and, in his complaint, boasts of his belief that he had plead into it. (Turner Complaint ¶¶ 9-10).

The net result is that, had plaintiff included a state law cause of action, this case would have been removable to federal court pursuant to SLUSA (in addition to Section 1452), the state law claim would have been dismissed, and the federal law claims would have proceeded in federal court. In other words, even by plaintiff's analysis, only a technicality separates those private securities class actions that are removed from those that may not be removed. By enacting SLUSA, therefore, Congress has endorsed no deference for a private plaintiff's choice of a state court forum, even presuming that the loophole was intentional (which is unlikely).

The true Congressional intent is clear: when a federal interest is at stake -- whether it is to close a loophole in the PSLRA or, as here, to protect the bankruptcy court's ability to efficiently and comprehensively address all actions that may affect the debtor's estate -- then such a plaintiff may be compelled to proceed in a federal forum. In re WorldCom, 293 B.R. at 329 ("Broadly construing the federal courts' bankruptcy jurisdiction is essential to their ability to preserve assets and reorganize the estate ... The efficiency and reorganization goals of the Bankruptcy Code require interpreting Section 1452 in favor of federal jurisdiction and removal except in the limited cases it expressly excepts.").

B.     Plaintiff's Cases are Inapplicable.

In support of his argument that Section 22(a) should take precedence over Section 1452, plaintiff relies on Retirement Systems of Alabama v. Merrill Lynch & Co., 209 F. Supp. 2d 1257 (M.D. Ala. 2002) ("RSA"), and Tennessee Consolidated Retirement Systems v. Citigroup, Inc.,

2003 U.S. Dist. LEXIS 10266 (M.D. Tenn. May 12, 2003) ("TCRS") (Ex. G). However, the courts in each of these cases expressly limited their holdings to situations where the plaintiff was a state pension plan. The reason for this limitation is that SLUSA, as part of its amendment to Section 22(a), created an explicit exemption for state pension plans. 15 U.S.C. § 77p(d)(2); RSA, 209 F. Supp. 2d at 1269.

It was in the context of this express exemption put into Section 22(a) by SLUSA that the court in TCRS found this provision to be more specific and more recent: "Given that SLUSA, a 1998 statute, allows *state pension plans*, such as TCRS, to pursue its Section 11 claims under the 1933 Act in state court and expressly bars any removal to federal court except as provided by 15 U.S.C. § 77p(c), the Court concludes that Section 22(a) is a special statute." 2003 U.S. Dist. LEXIS 10266, at *10 (emphasis added). In RSA, the court did not even go so far as to find that Section 22(a) trumped Section 1452. Rather, it elected to invoke its decision to abstain, because SLUSA's state pension plan exemption evidences "Congressional recognition of the special needs of state governments and pension plans":

> 15 U.S.C. §77p(d)(2)(A) exempts from the preemption provisions of the Securities Litigation Uniform Standards Act ("SLUSA") state governments and specifically state pension plans. . . . 15 U.S.C. §77v(a) disallows the removal of actions under the Securities Act of 1933 from any state court of competent jurisdiction. At a minimum, these provisions clearly evince a policy of special respect for the forum choices of *state pension plans* with regard to securities claims and for state courts whose jurisdiction is invoked to hear them, and adds a strong reason for abstention in this case *not present in most other cases.*

209 F. Supp. 2d at 1269 (emphasis added).[3] Plaintiff does not fall into the state government or pension plan exemption of SLUSA, and so does not implicate the policy exception to the general

---

[3] Another factor that weighed "heavily" in the RSA court's decision to abstain from jurisdiction was that court's doubt as to whether the action was truly "related to" the bankruptcy in question. Id. As discussed below, there is no such uncertainty here.

rule that "related to" bankruptcy removal trumps Section 22(a).[4]

## II. This Action Is Related to the Divine Bankruptcy.

Given that plaintiff's 1933 Act claims can be removed pursuant to Section 1452, the analysis turns to whether this action is "related to" the Divine bankruptcy proceedings. Plaintiff acknowledges that the applicable standard is whether "the outcome of [this] proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). In this Circuit, "related to" jurisdiction exists "when the dispute affects the amount of property for distribution [by the debtor's estate] or the allocation of property among creditors." In re FedPak Systems, Inc., 80 F.3d 207, 213-214 (7th Cir. 1996) (brackets in original, internal quotations omitted). Here, there are at least two independent bases to find that this action affects the debtor's estate.

### A. Defendants Have an Immediate, Non-Contingent Right To Indemnity from Divine's Bankruptcy Estate.

The first basis for "related to" jurisdiction is the fact that defendants, as directors of Divine, have an immediate, non-contingent right to indemnity from Divine. Divine's certificate of incorporation provides that, so long as defendants "acted in good faith and in a manner ... reasonably believed to be in or not opposed to the best interests of the Corporation," the "Corporation *shall* ... indemnify, to the fullest extent permitted by the DGCL, ... against

---

[4] Plaintiff also cites two cases in which there was an alleged conflict between Section 1452 and the Jones Act -- not Section 22(a) -- McRae v. Lykes Bros. S.S. Co., No. 98-3240, 1998 U.S. Dist. LEXIS 20132 (E.D. La. Dec. 22, 1998) (Ex. H), and Kinder v. Wisconsin Barge Line, Inc., 69 B.R. 11 (E.D. Mo. 1986). However, neither of these cases provides any analysis of the issue -- or even discusses the broad language of Section 1452 -- so they shed little light on resolving the apparent conflict between Section 1452 and Section 22(a). Even Judge Gottschall, who chose not to resolve the question, went out of her way to note that these two cases are "not particularly convincing" in advancing plaintiff's proposition. 244 F. Supp. 2d at 905; see also Ebbers, 2003 WL 22098022 at *4 ("[T]he two cases holding that non-removable claims under the Jones Act may not be removed under section 1452 did not analyze the conflict in the removal provisions at all, and the weight of Congressional intent in the enactment of SLUSA seems to outweigh the contrary opinions of these cases.")

expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with ... any threatened, pending or completed action, suit or proceeding ... ." (See Ex. A, Article XII.A.) (emphasis added). Critically, defendants' indemnification rights arose automatically upon the commencement of the securities litigation, including the instant action -- defendants do not need to initiate a separate action to establish their rights. Defendants have already incurred, and will continue to incur, expenses (primarily the fees and costs of counsel) in connection with the securities litigation, including this action, for which they are entitled to indemnity, and for which each defendant has filed indemnification claims in the bankruptcy court. These claims, when allowed and paid, will reduce the proceeds of the bankruptcy estate that are available to be distributed to other creditors of Divine.

Under such circumstances, courts have had no difficulty finding "related to" jurisdiction. See Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997); In re WorldCom, 293 B.R. at 322-23; Hohl v. Bastian, 279 B.R. 165, 175 (W.D. Pa. 2002); Philippe v. Shape, Inc., 103 B.R. 355, 358 (D. Me. 1989). In each of these cases, indemnification was sought by the company's (former) officers or directors, pursuant to a provision in its bylaws similar to that in Divine's certificate of incorporation. See Belcufine, 112 F.3d at 635 n.2; Hohl, 279 B.R. at 174-75; Philippe, 103 B.R. at 358. Each court found that such indemnification was sufficiently non-contingent to meet the Pacor standard -- even in Hohl, where (as here) the bylaw provision expressly required the officer to act "in good faith." 279 B.R. at 175; see also Pacific Life Ins. Co., 2003 WL 22025158, at *1 n.1 (holding that, under Pacor, if the indemnification agreement is in writing, "related to" jurisdiction is proper).

The Third Circuit's decision in Belcufine highlights the propriety of finding "related to"

jurisdiction when indemnification is required. In <u>Belcufine</u>, like here, the company was required to indemnify its directors for defense costs as well as any ultimate judgment. <u>Id.</u> at 635 n.2. The <u>Belcufine</u> court held that this indemnity obligation met the <u>Pacor</u> test, creating "related to" jurisdiction, and affirmed removal of the action. <u>Id.</u> at 636; <u>see also</u> <u>Global Crossing</u>, 2003 WL 21659360 at *1 (holding that the "possibility that litigation against an officer of a bankrupt corporation could lead to a claim against the corporation for contribution" was sufficient to confer "related to" jurisdiction).

This is an entirely different situation from that in <u>Steel Workers Pension Trust v. Citigroup, Inc.</u>, 295 B.R. 747, 753 (Bankr. E.D. Pa. 2003), where indemnification would have required "further litigation." Indeed, the <u>Steel Workers Pension Trust</u> court distinguished <u>Belcufine</u> on that very basis, emphasizing that, in <u>Belcufine</u>, the corporate by-laws created a right to reimbursement for defense fees and costs "without the need to file an additional lawsuit." 295 B.R. at 752. Thus, even assuming the <u>Steel Workers Pension Trust</u> case were the law in this district, remand would be inappropriate.[5]

Ignoring the nature of defendants' indemnification rights, Plaintiff nonetheless argues that defendants' right to indemnity here is "hypothetical" and "speculative" because defendants might not be able to exercise their indemnification rights, because they may have acted in bad faith. But no one -- not even plaintiff -- has alleged any bad faith by defendants. To the contrary, plaintiff himself trumpets the fact that he asserts "only strict liability and negligence claims," (Plaintiff's Memo at 1; Turner complaint at ¶ 9), which are unquestionably subject to

---

[5] Plaintiff's attempt to create a new standard for relatedness through the <u>Steel Workers Pension Trust</u> decision fails, because the <u>Pacor</u> test requires only that the effect on the debtor's estate be "conceivable," not "certain and quantifiable." <u>See</u> <u>In re WorldCom</u>, 293 B.R. at 322-23 (noting that plaintiff's argument "can be swiftly rejected" on this basis).

indemnification pursuant to Divine's indemnification clause. See United Artists Theatre Co. v. Walton, 315 F.3d 217, 230-31 (3d Cir. 2003) ("Directors and officers in Delaware may obtain indemnity for their own negligence."). Under these circumstances, there is nothing "hypothetical" or "speculative" about defendants' right to indemnity by the debtor.[6]

Moreover, the law in this district is that the filing of a proof of claim on an indemnity agreement establishes "related to" jurisdiction. In re Salem Mills, Inc., 148 B.R. 505, 510 (Bankr. N.D. Ill. 1992). On August 8, 2003, all defendants filed proof of claims in the Divine bankruptcy based, in part, on the indemnification provision of Divine's certificate of incorporation, (see, e.g., Proof of Claim of Filipowski, Ex. B), thereby establishing "related to"

---

[6] Plaintiff also asserts that defendants have no right to indemnity, despite the provision in Divine's certificate of incorporation, because (i) indemnification for violations of federal securities laws are supposedly contrary to public policy; and (ii) such claims are supposedly disallowed under Section 502(e)(1)(B) of the Bankruptcy Code. But the merits of indemnity claims are to be determined by the bankruptcy court, and may not be evaluated when this Court determines "related to" jurisdiction. Belcufine, 112 F.3d at 637; Pacific Life Ins., 2003 WL 22025158, at *1 n.2. Moreover, even if this Court considers the issue, defendants plainly are entitled to indemnification.

Federal law does not preempt state indemnification law, so indemnification is permitted where it complies with the general corporate law of the state of incorporation. Commodity Futures Trading Comm'n v. Richards, 1996 WL 199729, at *3 (N.D. Ill. April 23, 1996) (Ex. I); In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 273, 284 (D.N.J. 2000). Here, indemnification is explicitly permitted by Delaware law, without regard for the nature of the claims, so long as the person "acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." 8 Del. C. § 145(a). Given that plaintiff has not alleged any securities law (or other) violations implicating bad faith -- only strict liability and negligence -- there is no basis for suggesting that defendants' indemnification rights are "hypothetical" or "speculative." See In re Gaylord Container Corp., 735 A.2d 462, 475 n.41 (Del. Ch. 2000) (explaining that "good faith" refers to the duty of loyalty to the corporation, as distinguished from the duty of care); see also Hohl, 279 B.R. at 174-75 (finding "related to" jurisdiction even though indemnification bylaw required defendant to act in good faith, as determined by debtor's board of directors); United Artists Theatre, 315 F.3d at 231 (noting that recent changes to Delaware corporate law "make plain" that indemnification of officers and directors is only disallowed in cases of gross negligence).

As for Section 502(e)(1)(B), plaintiff has omitted a critical clause in the statute in order to argue that "contingent" claims are barred. Section 502(e)(1)(B) precludes claims that are contingent "as of the time of allowance or disallowance of such claim." Here, the time for allowance or disallowance of claims has not yet come. Any claims that have actually accrued at that time -- such as indemnification of defendants' defense costs incurred to date -- will not be "contingent" and will not be barred by Section 502(e)(1)(B).

12

jurisdiction for the securities law actions they are defending, including this one.

Defendants have a non-contingent, immediate right to indemnification from the debtor, for which defendants have filed the appropriate proofs of claim. This is the archetypical action "related to" a pending bankruptcy proceeding, as confirmed by ample case authority finding such jurisdiction under these circumstances.

### B. Divine's Creditors Are Likely to Pursue Some of the Same Assets Plaintiff Pursues, Which Will Provide Another Basis for Jurisdiction.

Divine's creditors have indicated that they intend to pursue claims against at least some of the defendants. In so doing, the creditors would pursue claims of the Divine bankruptcy estate for the benefit of all Divine creditors, with proceeds from the litigation to be distributed in accordance with a plan of reorganization. The creditors will likely pursue the same assets -- insurance proceeds of Divine's director's and officer's policies -- as plaintiff does here. Should these events occur, they will constitute a second, independent, basis for "related to" bankruptcy jurisdiction. The bankruptcy court not only will have "related to" jurisdiction, but may even stay the shareholder action because claims of the debtor are generally entitled to proceed first. See Fisher v. Apostolou, 155 F.3d 876, 882-83 (7th Cir. 1998) (finding "related to" bankruptcy jurisdiction over a third-party action "likely to affect" the assets pursued by the debtor in order to prevent "a race to the courthouse"); Megliola v. Maxwell, 293 B.R. 443, 446, 449 (N.D. Ill. 2003) (applying Fisher to enjoin an action by the debtor's shareholders against its officers and directors, because "a suit between third parties will affect the orderly administration of the estate").

### III. Plaintiff Cannot Justify Abstention.

As a last resort, plaintiff asks this Court to use its discretion, pursuant to section 1334(c)(1) of the Bankruptcy Code, to abstain from exercising jurisdiction over this matter.

13

However, it is not clear that abstention is even applicable to cases removed pursuant to bankruptcy jurisdiction (as opposed to cases where the federal court is exercising original jurisdiction). The issue has not been decided in this circuit, but the Ninth Circuit squarely held that such cases are not eligible for abstention: "Abstention can exist only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendant state action in favor of which the federal court must, or may, abstain." Security Farms v. International Brotherhood of Teamsters, 124 F.3d 999, 1009 (9th Cir. 1997); see also Smelser v. Moss, 2001 WL 1385897, at *3 (S.D. Ind. Aug. 29, 2001) (Ex. J) (noting Security Farms and relying on the consideration raised therein to deny abstention).

Even if abstention is considered, plaintiff falls far short of demonstrating that he satisfies the twelve-factor test for abstention. To the contrary, nearly all of the factors weigh heavily *against* abstention:

- Abstention would impair the efficient administration of the estate, as nine other similar actions are currently related and consolidated in this Court (factor 1);

- There are *no* state law issues in this action, as plaintiff himself emphasizes, so there is no basis to defer to a state court applying its own law (factor 2);

- Plaintiff has not demonstrated that the applicable substantive law is difficult or unsettled, so that this Court should defer to the state court (factor 3);

- There is no related proceeding in state court (factor 4);

- This action is closely related to the bankruptcy proceeding, not only due to defendants' indemnity claims and the likelihood that plaintiffs and the debtor will be pursuing the same assets, but because there is also substantial overlap between plaintiff's claims and the debtor's bankruptcy filing (factor 6);

- There is no need to sever state court claims; plaintiff has asserted none (factor 8);

- This action will not add substantially to this Court's docket, since nine other securities class actions that encompass these parties and claims are already related and consolidated in this Court (factor 9); and

- Plaintiff's filing of a state court action, asserting only federal claims, is indicative of the fact that it is he who is "forum shopping," to avoid this Court's

administrative orders (particularly its appointment of lead counsel) (factor 10). See In re Chicago, Milwaukee, St. Paul, & Pacific R.R., 6 F.3d 1184, 1189 (7th Cir. 1993).

Indeed, plaintiff's primary justification for abstention is not based on any of the relevant factors. Plaintiff seeks abstention (i) because it is supposedly "uncertain" whether "related to" jurisdiction exists here; (ii) out of deference to state court jurisdiction; and (iii) out of deference to plaintiff's choice of forum. In addition to being outside the proper scope of inquiry for abstention, plaintiff's baseless assertions are unconvincing.

As set forth above, there is no uncertainty concerning whether this action is "related to" the Divine bankruptcy. It is related. As for the supposed deference due to the state court's jurisdiction, and the plaintiff's choice of forum, plaintiff cannot establish that any such deference is due here. As discussed above, Congressional intent is that all cases related to a pending bankruptcy are to be removed to federal court, even if they are securities class actions. Nor does plaintiff provide any authority or logic to support his argument, instead citing only general cases that have nothing to do with bankruptcy removal.

## CONCLUSION

WHEREFORE, defendants respectfully request that this Court deny Plaintiff's Motion to Remand or to Abstain, and award such other and further relief as the Court deems proper.

Respectfully submitted,

ANDREW J. FILIPOWSKI

By: _____
One of his attorneys

Dated: January 12, 2004
Bruce S. Sperling
Thomas D. Brooks
Daniel A. Shmikler
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
312/641-3200